WALDEN, Judge.
Champion Map Corporation appeals from an order of summary judgment entered in favor of one of the co-defendants below, the appellee, First National Bank at Winter Park.
The complaint filed by the appellant sounds in equity and asks for an accounting. It alleges:
That as a result of various agreements appellant appointed co-defendant Chamco, Inc., its agent to collect certain monies due from various customers receiving appellant’s product; that Chamco was to collect these monies and deposit them in appellant’s bank account; that some of the monies so collected under this business arrangement were used for Chamco’s own use, and consequently, not deposited to the bank account established for appellant’s benefit; that the appellee bank has an interest in the monies due appellant and therefore the bank was joined as a party defendant in an effort to determine the rights of the parties in one cause of action.
Chamco was the local distributor for maps produced by the appellant pursuant to a franchise agreement entered into September 23, 1968. The arrangement was originally an “open account” billing procedure, that is, the appellant would ship its maps to Chamco on credit. Chamco got behind on its account with the appellant and signed two promissory notes for $15,000 and $30,000 in March and May of 1969.
The appellant’s president testified that because of Chamco’s poor record of payment they negotiated a new arrangement sometime around the first of July 1969, which the appellant refers to as “phase two” of the relationship between the appellant and Chamco. Under phase two Cham-co would solicit orders and forward them to the appellant which would ship the maps directly to the customers. Chamco would then collect from the customers and was to deposit the money in the appellant’s ac *52 count in the Commercial Bank of Winter Park.
In October 1969, the appellant realized that phase two was not working out because the money Chamco collected was not all being deposited in the appellant’s account. Therefore, “phase three” was entered into in which the only difference was that the customers were to be billed by the appellant and the payments were supposed to be made directly to the appellant.
The dispute between the appellant and the appellee bank centers on who has priority to Chamco’s bank account. The money in this account was apparently derived from collections for sales made under phases two and three. The bank filed a financing statement with the Secretary of State in regard to a security agreement with Chamco on December 17, 1968. (The president of the appellant corporation testified that he had knowledge of this security agreement sometime between May and July 1969.) Therefore, pursuant to the Florida UCC, Section 679.9-312(5) (a), F.S.1967, the bank would have priority to the account ahead of all other security interests in it because the bank filed first. However, the appellant contended below that its interest in the account was not under a security agreement, but that it had priority because the money therein was derived from assignments of contract rights to an assignee who was also to perform under the contract. Section 679.9-104(6), F.S. 1967, specifically excludes such assignments from the provisions of Article 9 of the UCC governing security agreements. The trial judge found that the assignments made to the appellant were not those excluded under the above provision and entered summary judgment in favor of the bank. We reverse.
As provided in Rule 1.510(c), F.R.C.P., 31 F.S.A., in order for a summary judgment to be properly issued it must be shown that “there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” We feel that the facts as reflected in the record of the instant case fail to meet this requirement.
Specifically, we find that there was a genuine issue as to whether the transactions between the appellant and Chamco created a security interest in the bank account or whether the transactions constituted an assignment of contract rights which should be excluded from the priority provisions in Article 9 of the Florida UCC.
It is generally recognized that summary judgments should be entered with caution, and that even if the evidence is uncontra-dicted, the trial court lacks the authority to enter a summary judgment if the evidence is susceptible to conflicting inferences. Meigs v. Lear, Fla.App.1968, 210 So.2d 479. We feel that the question of what kind of relationship was created between the appellant and Chamco is a difficult and complex one to say the least. The evidence presented was subject to varied interpretations and inferences, and thus summary judgment was improperly entered.
We are reversing because we feel that all the evidence should be first presented before the relationship is labeled to see if it falls within one of the exceptions to the rule that the first to file a security agreement will prevail. We do not mean to infer, however, that just because this complex relationship might be so labeled and fall into one of the pigeon holes that the appellant must prevail. This suit sounds in equity and asks for an accounting. Therefore, all equitable factors must be weighed, such as which parties have clean hands and which are responsible for creating the shortage.
We reverse and remand with the direction that the case proceed in accordance with the above reasoning.
Reversed and remanded.
CROSS, C. J., and McCAIN, J., concur.